UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JACOB RUSH, et al., ) | |
| ) | Case No. 1:07CV1068 |
| Plaintiffs, ) | |
| ) | |
| vs. ) | JUDGE KATHLEEN O'MALLEY |
| ) | (Magistrate Judge Mchargh) |
| CITY OF MANSFIELD, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | MEMORANDUM |
| ) | AND ORDER |

McHARGH, Mag.J.

The plaintiffs Jacob Rush and others (collectively, "Rush") have filed an action under 42 U.S.C. § 1983, alleging an excessive use of force and wrongful death, among other claims, against defendants City of Mansfield, Ohio; Richland County, Ohio; and other governmental entities and individuals. The action arose from a nighttime police raid to enforce a search warrant related to an alleged stolen property ring. See generally doc. 75, Amended Complaint.

On July 18, 2008, Rush filed a motion to compel discovery of criminal investigative records, which was denied for a failure to comply with Local Rule 37.1(a)(2)-(4). See doc. 118 (motion), and minutes of proceedings dated July 22,

2008. During a telephone conference concerning issues of disputed discovery, the parties were ordered to brief the issue of whether collateral estoppel forecloses discovery of the investigative files.

In response, the Mansfield defendants have filed a motion for a protective order. (Doc. 123.) In addition, defendant Richland County has filed a brief in support of the motion for a protective order. (Doc. 125.) The plaintiffs oppose the motion. (Doc. 127.)

## I. PROTECTIVE ORDER

A party, or the person from whom discovery is sought, is entitled to request a protective order to preclude or limit any inquiry into certain matters. Fed. R.Civ. P. 26(c). Rule 26 sets forth a procedure for limiting even relevant discovery when necessary. Tuszkiewicz v. Allen-Bradley Co., Inc., 172 F.R.D. 393, 395 (E.D. Wisc. 1997). Upon motion, the court may, "for good cause shown," make any order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4).

The party seeking a protective order bears the burden of proving that there is "good cause" for such an order. Pearson v. Miller, 211 F.3d 57, 72 (3d Cir. 2000); Lewis v. St. Luke's Hosp. Ass'n, 132 F.3d 33, 1997 WL 778410, at *3 (6th Cir. 1997) (TABLE, text in WESTLAW). The party seeking the order must show good cause by

2

demonstrating a particular need for protection. Pearson, 211 F.3d at 72. A demonstration of good cause requires specific and particular demonstrations of fact, not stereotyped or conclusory statements. Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981); United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).

Rule 26 outlines several factors which comprise "good cause" for a protective order; specifically, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Legitimate interests in privacy are among the proper subjects of protection. Pearson, 211 F.3d at 72. Absent a showing of "good cause," a motion for a protective order should be denied. Fed. R. Civ. P. 26(c).

### A. City of Mansfield's Motion

The Mansfield defendants argue that the plaintiffs are collaterally estopped from litigating "claims they have already lost," namely, claims "attacking the investigation, the probable cause for the warrant itself, and the use of and reliance on informants by law enforcement officers." (Doc. 123, motion, at 1.) They seek to prevent discovery on the following issues:

- The probable cause underlying the search warrant;
- The police investigation undertaken prior to obtaining the search warrant;
- The investigative file of the criminal charges related to the search warrant;
- The history of Plaintiff Krysten Blevins prior to February 28, 2007;
- Richland County Children Services' records relative to Krysten Blevins;

3

- The confidential informants involved in the investigation including, but not limited to, their relationship with Krysten Blevins, information they provided relative to any of the occupants of the Rush home, and the status of any criminal charges pending against them; and
- Any logs of police internal review of the status of the investigation (or any other).

Id. at 2.

The defendants characterize the plaintiffs' claims as "challenges to the police investigation, and specifically the reliance by the police on information obtained from confidential informants during that investigation," as well as the fact that a night time search warrant was obtained, and that a tactical team was deployed to carry out the warrant. (Doc. 123, memorandum in support, at 1.)

The defendants assert that in a criminal action against plaintiff John Rush, for receiving stolen property, the state court ruled on a motion to suppress after an evidentiary hearing. In denying the motion to suppress, the state judge "necessarily already considered, and rejected, challenges to the police investigation and the reliance on the informants." Id. at 2. The defendants claim that the state judge "fully reviewed and adjudicated the reasonableness of Detective Bosko's reliance on the confidential informants" and the other efforts that Det. Bosko undertook in support of the affidavit underlying the search warrant. Id. at 4-5, citing DX B (state court ruling) and DX C (hearing transcript).

Therefore, defendants argue that, because John Rush's motion was heard and denied, "collateral estoppel bars Plaintiffs from making those same challenges for a second time here, and the associated discovery should be disallowed as inadmissible

4

and irrelevant." Id. at 2-3. They contend that plaintiffs are barred from re-litigating questions that attack the underlying information "because these issues were already declared lawful, reasonable and valid." Id. at 6. The Mansfield defendants assert that plaintiffs' claims here are exactly those they lost in state court. Id. at 9-11. Nonetheless, they contend that plaintiffs are barred from re-litigated not simply the precise claims raised, "but all issues – both factual and legal – that were, or could have been, decided" in the criminal action against John Rush. Id. at 9.

The defendants also argue that the preclusive effect of the state court's ruling on the motion to compel should extend to much of the discovery sought:

> Plaintiffs' discovery efforts related to their challenge to the investigation and reliance on informants is not limited to the investigative file. Rather, it encompasses all of their discovery efforts related to Krysten Blevins' background including, but not limited to: Krysten Blevins' history prior to February 28, 2007; Childrens' Services case files for Krysten Blevins and the confidential informants; the confidential informants involved in the investigation including, but not limited to, their relationship with Krysten Blevins, the information they provided to police regarding the occupants of the Rush home, and any criminal charges against them; and logs of police internal review of the status of the investigation (or any other). Because claims attacking the investigation and warrant are barred by collateral estoppel, this overbroad discovery should all be prohibited.

(Doc. 123, at 6.)

Defendant Richland County also argues that "[a]ll of this discovery is related to or directly pertains to the validity of the search warrant." (Doc. 125, at 3.) Richland County asserts that all named plaintiffs "are barred by the doctrine of collateral estoppel from re-litigating the issue of probable cause. Additionally,

5

Plaintiffs are also barred from challenging all the sub-issues that directly contributed to the state court's determination of the sufficiency of the search warrant." Id. at 8.

Richland County claims that "John Rush had a complete, fair, and fully adequate opportunity to challenge the issue of probable cause." Id. at 9. They point out that counsel in this litigation and his criminal proceeding are identical. In addition, "Plaintiffs had the opportunity to state their arguments as to all of the issues pertaining and contributing to the issue of probable cause and the sufficiency of the search warrant." Id.

Finally, the Mansfield defendants argue that plaintiffs' discovery is legally barred under the "law enforcement investigatory privilege." (Doc. 123, at 13.) In response to that argument, plaintiffs refer the court to their motion to compel. (Doc. 127, at 11; doc. 118.)

### B. Plaintiffs' Response

In response, plaintiffs first point out that issue preclusion (also known as collateral estoppel[1]) is an affirmative defense, which defendants are prohibited from first raising in a discovery dispute. (Doc. 127, at 4.)

Rule 8(c)(1) specifically lists "estoppel" and "res judicata" as affirmative defenses. Fed. R. Civ. P. 8(c)(1). The answers filed by the various defendants do

---

[1] Boone v. Spurgess, 385 F.3d 923, 927 n. 4 (6th Cir. 2004).

6

not include issue preclusion or collateral estoppel as an affirmative defense. See doc. 76, 77, 78, and 99. Collateral estoppel is an affirmative defense which must be pled or it is ordinarily deemed waived. Municipal Resale Service Customers v. FERC, 43 F.3d 1046, 1052 n.4 (6th Cir. 1995); Moore v. City of Paducah, 890 F.2d 831, 833 n.4 (6th Cir. 1989).

Plaintiffs also argue that "[t]he general rule in Ohio is not to extend preclusive effect in civil cases to issues addressed in prior criminal cases." (Doc. 127, at 5, citing Knott v. Sullivan, 418 F.3d 561, 568 (6th Cir. 2005); Boone v. Spurgess, 385 F.3d 923, 927 (6th Cir. 2004); State ex rel. Ferguson v. Court of Claims of Ohio, 98 Ohio St.3d 399, 404, 786 N.E.2d 43, 48 (2003); and other cases.) Plaintiffs claim that defendants fail to show any basis for applying issue preclusion in this civil case. (Doc. 127, at 6.)

Finally, plaintiffs contend that issue preclusion does not support the motion for a protective order. (Doc. 127, at 6-12.) Plaintiffs point out that while the state court judge determined there was probable cause to issue a search warrant, "how that warrant would be executed remained at all times a tactical, law enforcement decision." Id. at 2. They argue that the discovery at issue "relates to the reasonableness of the force used that night and is not precluded by any events or rulings in the criminal prosecution of John Rush for receiving stolen property." Id. at 2-3. They state that the Supreme Court has directed citizens harmed by alleged police violations in the execution of warrants to file a civil suit, and that this action

7

is such a suit. Id. at 1, citing Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 2166 (2006).

In addition, Plaintiffs state that, while the state court did rule on probable cause, that is not an element of proof in their excessive force claim. They argue that an excessive force claim[2] "involves an inquiry into the chain of events leading up to and informing the Defendants' actions on the night of the raid." Id. at 6. Their claims do not simply challenge probable cause, they stress, but require an inquiry into all the facts and circumstances leading up to the death of Gilbert Rush. Id. at 11. The excessive force claim "demands an objectively reasonable look at the totality of circumstances." Id. (citing Graham v. Connor, 490 U.S. 386, 396-397 (1989).)

The plaintiffs contend that there is no identity of issues between John Rush's criminal trial and this case. "John Rush did not litigate excessive force, wrongful death, emotional distress, or any of the other claims and issues in controversy in this civil case." Id. at 8.

They also point out a lack of the element of privity. "The other Plaintiffs in this civil case had absolutely no legal interest in the outcome of John Rush's criminal trial, no chance of being bound by or benefitting from its outcome, and no

---

[2] Claims of excessive force are judged under the Fourth Amendment's "objective reasonableness" standard. Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Saucier v. Katz, 533 U.S. 194, 204 (2001).

8

opportunity to advance or retard the civil rights claims at issue here." (Doc. 127, at 9.)

### C. Collateral Estoppel under Ohio Law

The application of collateral estoppel, or issue preclusion, is governed the law of the state in which the district court is located. McKinley v. City of Mansfield, 404 F.3d 418, 428 (6th Cir. 2005), cert. denied, 546 U.S. 1090 (2006); Brindley v. Best, 192 F.3d 525, 530 (6th Cir. 1999). Under Ohio law,

> Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

Thompson v. Wing, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994) (citing Whitehead v. Gen. Tel. Co., 20 Ohio St.2d 108, 254 N.E.2d 10 (1969) (syllabus)). In other words, Ohio holds that:

> . . . a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

Knott, 418 F.3d at 567-568 (quoting Boone, 385 F.3d at 927 n. 4). A claim cannot be barred under issue preclusion unless the state court considered the "identical" claim, and the court's rejection of the claim was "essential" to its judgment. McKinley, 404 F.3d at 428-429.

9

Under Ohio law, the burden of demonstrating that these factors have been satisfied rests with the movants here. Knott, 418 F.3d at 568.

1. Were the issues actually and directly litigated previously?

The defendants argue that John Rush "fully litigated a Motion to Suppress the search warrant, taking extensive testimony over two days regarding, inter alia, the nature of the police investigation, the decision to use confidential informants, and the alleged unreliability of the confidential informants." (Doc. 123, at 8; see also, at 5-6.)

The plaintiffs contend that there is no identity of issues between John Rush's criminal proceeding and this case, because John Rush did not litigate excessive force, wrongful death, emotional distress, or the other claims in this case. (Doc. 127, at 8.)

The state court ruling on the motion to suppress evidence addressed the allegations that the warrant lacked probable cause because the detective-affiant "knowingly included information in his search warrant affidavit which was not accurate or was misleading." (Doc. 123, DX B, state court rulings, at 5.) The court found that none of the alleged omissions made the affiant's representations false. The court ruled that "[t]he warrant was supported by a sufficiently reliable affidavit to establish probable cause," and overruled the motion to suppress. Id. at 7.

The claims in this case range beyond the issues raised in the motion to suppress. In contrast, the court in Carlton v. Pytell found the plaintiff in a Section 1983 action was collaterally estopped because he attempted to relitigate "the precise

10

issue" that had been decided by the state court of appeals. Carlton v. Pytell, 986 F.2d 1421, 1993 WL 44514, at *5 (6th Cir. 1993) (TABLE, text in WESTLAW), cert. denied, 510 U.S. 882 (1993).

Similarly, in Smith v. Thornburg, the plaintiff was estopped from pursuing a malicious prosecution claim where state court had ruled that "probable cause existed to bind over the assault charge to the grand jury." Smith v. Thornburg, 136 F.3d 1070, 1077 (6th Cir. 1998).

This court agrees that issues underlying the civil claims here were not actually and directly litigated in the state court suppression proceedings. The state court considered the narrow issue of probable cause supporting the warrant, which was the issue essential to the ruling on the motion to suppress. For example, the state court limited discovery concerning information received from informants and related juvenile proceedings, as not being relevant under Ohio Crim.R. 16. See generally doc. 123, DX B, at 2, 7. While not critical to a finding of probable cause, such information may be relevant to the current Section 1983 action. Where the issues are not identical and essential to the judgment, issue preclusion is not appropriate. Brengettcy v. Horton, 423 F.3d 674, 683 (7th Cir. 2005); Wolfe v. Perry, 412 F.3d 707, 717 (6th Cir. 2005); McKinley, 404 F.3d at 428-429.

2. Were the issues passed upon and fully determined by the state court?

The defendants assert that plaintiffs' claims were fully adjudicated in the criminal action, because the court conducted an evidentiary hearing on the motion to suppress. (Doc. 123, at 5.)

A full and fair opportunity to litigate an issue generally includes the opportunity to appeal. See generally Johnson v. Watkins, 101 F.3d 792, 793 (2d Cir. 1996). Under Ohio law, an order denying a motion to suppress does not constitute a final, appealable order. See, e.g., Fuller v. Cuyahoga Metro. Housing Auth., No. 1:06CV2093, 2008 WL 339464, at *12-*13 (N.D. Ohio Feb. 6, 2008). John Rush eventually filed a plea of guilty to a fourth-degree misdemeanor for receiving stolen property. (Doc. 125, at 5.) There is no indication that the order denying Rush's motion to suppress received any sort of appellate review. Thus, the issue was not fully litigated in state court, and the other plaintiffs had no "full and fair" opportunity to litigate the claims. See Fuller, 2008 WL 339464, at *12-*13. See generally Allen v. McCurry, 449 U.S. 90, 95 (1980) ("collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case"); Whitley v. Seibel, 676 F.2d 245, 250 (7th Cir. 1982), cert. denied, 459 U.S. 942 (1982) ("We doubt that collateral estoppel would ever be appropriate solely on the basis of a preliminary hearing."). But see Prokos v. City of Athens, No. 02-4291, 2004 WL 2940867, at *4-*5 (6th Cir. Dec. 21, 2004) (contra; suppression hearing is sufficient).

3. Were the current plaintiffs in privity with John Rush?

The defendants argue that the other plaintiffs should be held to have privity with John Rush, because they share the same attorney who represented him in the suppression hearing, and the amended complaint in this action was filed shortly before the suppression hearing. "John Rush and Plaintiffs' counsel thus knew their

12

criminal argument about the warrant and the informants were the same issues all Plaintiffs were asserting in this civil Section 1983 case." (Doc. 123, at 9.)

Plaintiffs counter that privity is defined as "a legally recognized interest in the same subject matter." (Doc. 127, at 9.) They assert that the other plaintiffs had "no legal interest in John Rush's criminal trial, no chance of being bound by or benefitting from its outcome, and no opportunity to advance or retard the civil rights claims at issue here." Id.

The defendants have failed to establish the element of privity.

### 4. Use of criminal determination to establish fact in civil action

An additional factor in the case before this court is that "Ohio state courts generally frown upon the use of criminal proceedings to estop parties in subsequent civil proceedings." Boone, 385 F.3d at 928 n.4 (citing Ferguson, 98 Ohio St.3d 399, 786 N.E.2d at 48.) See also Knott, 418 F.3d at 568; Fuller, 2008 WL 339464, at *12. But see Prokos, 2004 WL 2940867, at *4-*5 (contra). In light of the defendants' failure to satisfy the other elements, this factor weighs against a finding of good cause for a protective order.

### D. Law Enforcement Investigatory Privilege

Finally, the Mansfield defendants argue that plaintiffs' discovery is legally barred under the "law enforcement investigatory privilege." (Doc. 123, at 13.) In response to that argument, plaintiffs refer the court to their motion to compel. (Doc. 127, at 11; doc. 118.)

13

Privileged matters are protected from discovery. Fed. R. Civ. P. 26(b)(5). Federal courts apply the federal law of privilege to all federal law claims. Pearson, 211 F.3d at 66; Urseth v. City of Dayton, 110 F.R.D. 245, 253 (S.D. Ohio 1986). The burden of establishing privilege rests with the party asserting it. See, e.g., In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002), cert. dismissed, 539 U.S. 977 (2003) (attorney-client). The Sixth Circuit has not ruled on the existence of the law enforcement privilege. See, e.g., Dean v. F.D.I.C., 389 F.Supp.2d 780, 791-792 (E.D. Ky. 2005) (not recognizing privilege in that case). Several other circuits have recognized the privilege, and defendants cite two such cases in support. See doc. 123, at 13, citing Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997), and In re Department of Investigation of the City of New York, 856 F.2d 481, 483-484 (2d Cir. 1988).

Both cases cited, however, merely support defendants' assertion that a law enforcement investigatory privilege exists. Neither case truly defines the contours of the privilege or supports defendants' claim that it should apply in this case. The Mansfield defendants' argument for investigatory privilege is vague and conclusory. Defendants have not offered any case law to support their claim that the investigatory privilege applies under these particular circumstances. Both cases cited acknowledge the existence of the privilege, but also recognize that it is necessarily a qualified privilege. Additionally, defendants have not addressed the unique challenges presented by a Section 1983 case and any resulting impact on the scope of the privilege.

14

In Dellwood Farms, for example, the Seventh Circuit, while opining "there ought to be a pretty strong presumption against lifting the privilege," recognized that:

> The law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for the privileged materials. The balancing of that need – the need of the litigant who is seeking privileged investigative materials – against the harm to the government if the privilege is lifted is a particularistic and judgmental task [within the discretion of the district judge].

Dellwood Farms, 128 F.3d at 1125 (internal citation omitted). See also Urseth, 110 F.R.D. at 253 (privilege to be determined by case-by-case balancing). In balancing the competing interests, the purpose of the privilege is relevant, namely, "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Department of Investigation, 856 F.2d at 484. The mere invocation of an ongoing investigation is insufficient to support the claim of privilege. Kitevski v. City of New York, No. 04CIV7402, 2006 WL 680527, at *3 (S.D. New York Mar. 16, 2006).

Among those courts examining the existence of the privilege, many have considered the factors outlined in Frankenhauser v. Rizzo:

> In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which

15

>	governmental self-evaluation and consequent program improvement
>	will be chilled by disclosure; (4) whether the information sought is
>	factual data or evaluative summary; (5) whether the party seeking the
>	discovery is an actual or potential defendant in any criminal
>	proceeding either pending or reasonably likely to follow from the
>	incident in question; (6) whether the police investigation has been
>	completed; (7) whether any intradepartmental disciplinary proceedings
>	have arisen or may arise from the investigation; (8) whether the
>	plaintiff's suit is non-frivolous and brought in good faith; (9) whether
>	the information sought is available through other discovery or from
>	other sources; and (10) the importance of the information sought to the
>	plaintiff's case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973). See, e.g., Urseth, 110 F.R.D. at 253. Some courts have held that the tenth consideration, the importance of the information to the plaintiff's case, is the most important. Urseth, 110 F.R.D. at 253. The court in Urseth, a Section 1983 action, ruled that the privilege would be upheld only if the damage to the government or to the public interest from disclosure "significantly outweighs the harm to plaintiff from nondisclosure." Id.

Also relevant in the case before this court is the issue of timing. The defendants assert that "the criminal investigation [of the theft ring] remains ongoing," and point out that "criminal charges are pending against Plaintiff [Krysten] Blevins." (Doc. 123, at 13.) The charges against Blevins were filed more than a year after the commencement of this civil suit.

The existence of the privilege is not unlimited as to time. The court in Swanner v. United States noted "while pendency of a criminal investigation is a reason for denying discovery of investigative reports, this privilege would not apply indefinitely." Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969). See also

16

Frankenhauser, 59 F.R.D. at 345 ("over two years have elapsed since the completion of the investigation, and no criminal charges have been brought against anyone").

The search warrant at issue was executed in February 2007. It appears that the only stolen property recovered was a baby stroller and car seat. (Doc. 118, PX F, Blevins statement, at 4; doc. 106, Bosko dep., at 135-136; compare Bosko dep., at 78-79.) On May 1, 2008, fourteen months after the execution of the warrant, Bosko filed charges against Blevins in the Court of Common Pleas, Juvenile Division, for aiding and abetting the receipt of stolen property with a value of less than $500 (equivalent to a first degree misdemeanor). (Doc. 118, PX D.) The defendants do not claim that additional criminal charges will be brought.

Finally, the court notes that, in order to claim protection under the privilege, a party "must in good faith identify each particular document [asserted as privileged], and deliver it to the Court under seal for an in-camera inspection." Urseth, 110 F.R.D. at 254. See also Swanner, 406 F.2d at 719; Philadelphia Resistance v. Mitchell, 58 F.R.D. 139, 142 (E.D. Pa. 1972).

The motion for a protective order will not be granted, at this time, on the grounds of privilege. The defendants have not articulated a sufficient basis for the privilege, such as, how disclosure would impact a pending investigation. The privilege asserted requires a balancing of the conflicting interests, rather than the simple assertion of privilege. See, e.g., Dellwood Farms, 128 F.3d at 1125; Urseth, 110 F.R.D. at 253; Frankenhauser, 59 F.R.D. at 344. In addition, any documents which are sought to be protected would need a detailed, in camera review.

17

The defendants have not demonstrated good cause for a protective order based on privilege.

### E. Summary

The defendants have failed to show good cause for a protective order, based on issue preclusion (collateral estoppel), which would limit the scope of discovery. The affirmative defense of estoppel was not raised in a timely manner, pursuant to Rule 8. In addition, the defendants have failed to establish the requirements to bar discovery on the theory of issue preclusion.

In support of the motion for a protective order, the defendants also argue that the requested discovery is "inadmissible and irrelevant." (Doc. 123, at 2-3.) Without ruling on specific requests at this point, the materials relating to plaintiffs' excessive force cause of action, and their other civil claims, generally appear to be within the bounds of relevancy in the discovery context. See generally doc. 118. The Federal Rules of Civil Procedure permit discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Fed. R.Civ. P. 26(b)(1). The relevance burden is met if the party can show that the discovery sought "appears reasonably calculated to lead to the discovery of admissible evidence." Id. Generally, "the information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Gile v. United Airlines, Inc., 95 F.3d 492, 495 (7th Cir. 1996).

18

Also, the defendants have not demonstrated good cause for a protective order based on privilege. The defendants shall comply with pending discovery requests consistent with this order. To the extent that privilege is invoked, the defendants shall submit to this court a privilege log of any contested documents, with a detailed affidavit specifying the basis of the privilege for each item, addressing how disclosure would threaten legitimate government interests, as well as other relevant factors outlined above.

The motion for a protective order ([doc. 123](doc. 123)) is denied.

IT IS SO ORDERED.

| Aug. 11, 2008 | /s/ Kenneth S. McHargh |
| | Kenneth S. McHargh |
| | United States Magistrate Judge |