UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH GOODWIN**, as | : | Case No. 1:15-cv-27 |
| **Administrator of the Estate of Tanisha** | : | |
| **Anderson, Deceased,** | : | |
| c/o David B. Malik | : | Judge Donald C. Nugent |
| Attorney at Law | : | |
| 8437 Mayfield Rd. Suite 101 | : | **AMENDED COMPLAINT** |
| Chesterland, OH 44406, | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **CITY OF CLEVELAND, OHIO,** | : | |
| 601 Lakeside Ave. | : | |
| Cleveland, Ohio 44114 | : | |
| | : | |
| and | : | |
| | : | |
| **SCOTT ALDRIDGE** | : | |
| **BRYAN MYERS** | : | |
| **C/O Cleveland Police Department** | : | |
| 1300 Ontario St. | : | |
| Cleveland, OH 44113 | : | |
| | : | |
| **Individually and in Their Official** | : | |
| **Capacities as Employees of the** | : | |
| **City of Cleveland, Ohio** | : | |
| | : | |
| **Defendants.** | : | |

## I.   PRELIMINARY STATEMENT

1. This civil rights case challenges the excessive force used on Tanisha Anderson and the denial of medical care by the Cleveland Police, causing her death. The death of this joyful, loving, unarmed 37 year old woman in the midst of a mental health crisis is part of the pattern and practice of excessive force by Cleveland Police Division (CPD) officers recently documented by a Department of Justice (DOJ) Investigative report:

1

http://www.justice.gov/usao/ohn/news/2014/3%20Cleveland%20Division%20of%20Police%20Findings%20Letter.pdf

2. On November 12, 2014, Tanisha was experiencing a mental health episode. Tanisha's family members called 911 for assistance. When Cleveland Police officers placed Tanisha in zone car, Tanisha became anxious and scared due to her mental state. The officers then screamed at her and pushed on her and then slammed her to the ground and put pressure on her back while handcuffing her. As a result, Tanisha lost consciousness and stopped breathing. The officers unduly delayed calling for medical assistance and did not provide any medical care themselves. Plaintiffs now bring this case seeking fair compensation and to ensure that in the future citizens experiencing mental health crises are properly approached and assisted and not subdued or killed with excessive force.

## II.  PARTIES

3. Plaintiff Elizabeth Goodwin is the Administrator of the Estate of Tanisha Anderson and brings this action for the benefit of Ms. Anderson's next of kin, including her mother Cassandra Johnson, daughter Mauvian Green and other family members.

4. Defendant Scott Aldridge was at all times relevant to this action a law enforcement officer employed by the Cleveland Police Department. Defendant Aldridge is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as an employee of the City of Cleveland.

5. Defendant Bryan Myers was at all times relevant to this action a law enforcement officer employed by the Cleveland Police Department. Defendant Myers is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as an employee of the City of Cleveland.

6. Defendant City of Cleveland, Ohio is a unit of local government organized under the laws of the state of Ohio. Defendant City of Cleveland is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Defendant City of Cleveland is also a public entity within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12131.

### III. STATEMENT OF FACTS

**A. Tanisha Lived Safely with her Loving Family**

7. Tanisha Anderson was a 37 year old African American woman and mother of a teenage daughter. She suffered from bipolar disorder and schizophrenia, but her condition was generally well controlled with medication.

8. Tanisha Anderson was a qualified individual with a disability for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12131.

9. Tanisha lived in one side of a duplex with her mother, Cassandra Johnson and teenage daughter, Mauvian Green. The other side of the duplex was occupied by Tanisha's brother, Joell Anderson and his life partner, Theresa.

10. Tanisha loved to laugh and was a loving daughter to Cassandra, mother to Mauvian and sister to her siblings Joell Anderson and Jennifer Johnson.

**B. Excessive Force Used on November 12, 2014**

11. On November 12, 2014, Tanisha was in the midst of a mental health crisis. She was not armed, violent, intoxicated, or suspected of having committed any crime.

12. That evening she became somewhat disoriented and left the family home in her lightweight nightgown and without shoes, which was not appropriate for the cold

Case: 1:15-cv-00027-DCN Doc #: 64 Filed: 07/01/16 3 of 13. PageID #: 1403

weather. Concerned for his sister's safety, Joell Anderson called 911 to request an ambulance or medical professionals to assist her.

13. At approximately 9:20 p.m., two Cleveland police officers arrived at Tanisha's mother's home at 1374 Ansel Road, Cleveland, Ohio.

14. The officers spoke with Tanisha and her family calmly and it was anticipated at the end of that discussion that Tanisha would get something to eat and then go to bed. The officers left the house.

15. The officers provided a CAD number to be referenced in the event any additional assistance was needed.

16. After a while Tanisha again appeared confused and tried to leave the house while not properly dressed.

17. At approximately 10:46 p.m., the family called 911 again to ask the officers to come back. The CAD number was offered but the dispatcher said that was not necessary.

18. At approximately 10:51 p.m., Defendants Aldridge and Myers responded to the family home. These were not the same officers who had previously assisted the family.

19. Tanisha's family attempted to give information to the officers but they hardly addressed the family at all. They were rude and disrespectful to the family and to Tanisha.

20. Defendants Aldridge and Myers escorted Tanisha to the back seat of their zone car to transport her to the hospital for a mental health evaluation.

21. During this period the family members were instructed to stay inside the home preventing them from helping Tanisha stay calm and making them unavailable to Tanisha as she was being escorted by the armed police officers.

Case: 1:15-cv-00027-DCN Doc #: 64 Filed: 07/11/16 4 of 13. PageID #: 1431

4

22. Inside the zone car, Tanisha became anxious about being in a confined space and began to panic. Tanisha tried to get out of the zone car.

23. Defendant Aldridge grabbed Tanisha and began yelling at her and pushing on her to force her back into the zone car.

24. A terrified Tanisha called out for her mother and brother and recited the Lord's Prayer.

25. Defendant Aldridge then grabbed Tanisha, slammed her to the sidewalk, and pushed her face into the pavement. He placed his knee onto her back, placed his weight on her and placed Tanisha in handcuffs. Defendant Myers assisted in restraining the prone, helpless woman.

26. A few minutes later, Tanisha became unconscious. Soon afterwards she stopped breathing altogether.

27. Tanisha was lying prone on the sidewalk with her nightgown pulled up. She was naked beneath the nightgown and exposed to the public on the walkway.

28. Family members called for the police to check on her and the officers falsely claimed she was sleeping. Family members were ordered to stay away from her and could not assist her. The Defendant officers eventually allowed Joell to place a coat over his sister.

29. Defendants unreasonably delayed calling for EMS and let many precious minutes pass before initiating a call for medical assistance.

30. At approximately, 11:34 p.m., a call was finally placed for EMS.

31. During the lengthy time that Tanisha lay on the ground, Defendant officers failed to provide any medical attention to Tanisha. Defendant officers did not provide CPR or chest compressions. During this entire time Tanisha was unconscious and unresponsive and eventually not breathing at all.

32. During the lengthy time that Tanisha lay on the ground, Defendants also prevented Tanisha's family members from providing her medical attention.

33. At approximately 11:41 p.m., the EMS squad arrived at the scene. EMS personnel found Tanisha unresponsive and not breathing, with her hands still cuffed behind her back.

34. After transporting Tanisha to the back of the ambulance, EMS personnel found that Tanisha had no pulse. EMS personnel were unable to revive her with CPR or compressions.

35. Tanisha was transported to the Cleveland Clinic where she was pronounced dead.

36. The Cuyahoga County Coroner has ruled the death of Tanisha Anderson as a homicide: "Sudden death associated with physical restraint in a prone position in association with ischemic heart disease and Bipolar disorder with agitation."

37. At all times relevant to this action Defendants Aldridge and Myers acted within the scope of their duties as Cleveland Police Officers.

38. At all times relevant to this action, Defendants Aldridge and Myers acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the health, safety and rights of Tanisha Anderson when they confronted her, used force on her, and failed to secure or provide timely medical assistance on November 12, 2014.

**C. Policies, Practices, and Customs**

39. Defendant City of Cleveland's policies, practices, customs and usages regarding the interaction of officers with mentally ill persons were the moving force behind the use of force and proximately caused Tanisha Anderson's suffering and death.

40. These policies, practices, customs and usages were recently verified by the United States Department of Justice (DOJ) which released an investigative report regarding the Cleveland Police Department (CPD) in December 2014 that "revealed a clear pattern or practice of use of excessive force by officers".

41. Cleveland General Police Order (GPO) 3.2.06 instructs officers regarding "Handling the Mentally Ill." The policy fails to direct officers to reduce tension, develop a plan, keep voices low, alter the use of force, or slow the pace of the encounter as techniques to avoid escalating the problems faced by mentally ill citizens. The policy suggests that officers consult with Mental Health Services Inc. but provides no contact information. The policy fails to indicate that mental Health Services Inc has since changed its name. Defendants Aldridge and Myers did not consult with any supervisor or mental health professional during their encounter with Ms. Anderson. The inadequate and incomplete policy on handling mentally ill citizens was a moving force behind the excessive force used on Tanisha Anderson and proximately caused her suffering and death.

42. Defendant City of Cleveland failed to adequately train and supervise the officers to properly manage interactions with mentally ill citizens in order to minimize the use of force during such interactions.

43. At all times relevant to this case it was foreseeable that Cleveland police officers would, as part of their normal duties, encounter persons such as Tanisha Anderson who were experiencing a mental health crisis.

44. By failing to adequately train and supervise officers to properly manage interactions with mentally ill citizens, the City of Cleveland acted with deliberate indifference to the health, safety and rights of mentally ill citizens, including Tanisha Anderson. The failure

7

to train and supervise officers to properly manage interactions with mentally ill citizens was a moving force behind the excessive force used on Tanisha Anderson and proximately caused her suffering and death.

45. The Department of Justice's Report found that "CDP officers too often use unreasonable force against individuals with mental illness, individuals in medical crisis, and individuals with impaired faculties who may be unable to comply with officers' demands or who may respond erratically for reasons beyond their control."

46. Furthermore, the DOJ found that the majority of CPD officers are not trained to "use appropriate techniques or de-escalate encounters with individuals with mental illness or impaired faculties to prevent the use of force," and "officers do not adjust the application of force to account for the person's mental illness."

47. Defendant City of Cleveland has a policy, practice and custom of failing to supervise officers to reduce excessive force, and failing to train officers to resolve encounters with citizens, including mentally ill citizens, without using excessive force. Defendant has been on notice that this policy is inadequate since at least August 2013 when the Police Executive Research Forum recommended significant changes to its policy, training, and supervision concerning the use of force. That policy, practice and custom was the moving force behind the excessive force used against Tanisha Anderson and proximately caused her suffering and death.

48. The Department of Justice noted in its report, "Our review of reports and investigations of officers' use of force, both deadly and less lethal, revealed that CDP officers lack some of the basic support, skills, and knowledge required to safely and effectively respond to situations that commonly arise in law enforcement encounters." Furthermore, "[CDP's

failure to ensure proper training] has contributed to the pattern or practice of excessive force that we identified and has placed officers and the community in danger."

49. Defendant City of Cleveland has a policy, practice and custom of failing to adequately train and supervise officers to restrain subjects so as to minimize the risk of positional asphyxia. No written materials are shared with officers describing positional asphyxia. No training on positional asphyxia is provided.

50. It is certain that Cleveland police officers will restrain subjects in the prone position in the course of their work. Even though that task is certain to be performed, those officers are not trained to move those subjects from the prone position as soon it can be done safely in order to prevent positional asphyxia. Nor are officers trained regarding the predisposing factors to positional asphyxia, including obesity.

51. At all times relevant to this case the Defendant City of Cleveland had a policy, practice and custom of failing to adequately train and supervise officers to call EMS promptly whenever a subject of a use of force is in need of medical care.

52. Defendant City of Cleveland has a policy, practice and custom of failing to adequately investigate and discipline police officers who use excessive force on citizens. This policy, practice and custom was the moving force behind the excessive force used against Tanisha Anderson and proximately caused her suffering and death.

53. The Department of Justice identified this deficiency in its report, stating, "Our review found that several of CDP's systems for investigating and holding officers accountable for the use of excessive force are flawed, including Internal Affairs, the Use of Deadly Force Investigation Team, and the Tactical Review Committee. In some cases, these flaws prevented the Division from holding officers accountable for serious misconduct."

The report indicates that "[d]iscipline is so rare that no more than 51 officers out of a sworn force of 1,500 were disciplined in any fashion in connection with a use of force incident over a three-and-a half-year period." This failure to investigate and discipline the use of excessive force has led officers to believe that they are authorized to use excessive force with impunity.

54. These policies, practices, and customs directly and proximately resulted in the death of Tanisha Anderson, a nonviolent, mentally ill woman, not suspected of any crime. As the Department of Justice noted:

> CDP's pattern or practice of excessive force is both reflected by and stems from its failure to adequately review and investigate officers' uses of force; fully and objectively investigate all allegations of police misconduct; identify and respond to patterns of at-risk behavior; provide its officers with the support, training, supervision, and equipment needed to allow them to do their jobs safely and effectively; adopt and enforce appropriate policies; and implement effective community policing strategies at all levels of CDP.

**D. Harm to Plaintiffs**

55. Family members, including Tanisha's daughter, witnessed all of the violence and abusive treatment done to Tanisha through the windows of the house. It was horrifying for them to be so close and yet be instructed by the officers not to approach their loved one who was in obvious distress.

56. As a direct and proximate result of the conduct of Defendants City of Cleveland, Aldridge and Myers, Tanisha Anderson suffered physical injury, pain and suffering, emotional and psychological trauma, and eventually died as a result of the use of force and failure to provide timely and adequate medical care described above.

57. As a further direct and proximate result of Tanisha Anderson's wrongful death, Ms. Anderson's survivors, next of kin and/or heirs have suffered permanent damages,

including but not limited to, grief, depression, and severe emotional distress. They have incurred funeral bills and other expenses and will incur additional expenses in the future.

## IV. FIRST CAUSE OF ACTION- EXCESSIVE FORCE AND DENIAL OF MEDICAL CARE (42 U.S.C. § 1983)

58. Defendants Aldridge, Myers, and City of Cleveland have, under color of law, deprived Tanisha Anderson of rights, privileges, and immunities secured to her by the United States Constitution, including the prohibition on unreasonable searches and seizures contained in the Fourth and Fourteenth Amendments to the United States Constitution.

59. Defendants Aldridge and Myers used excessive force when they initially restrained Tanesha Anderson, when they unreasonably put pressure on her back after she was restrained and when they permitted her own extreme weight to continue to put pressure on her respiratory organs by letting her lay prone on the ground restrained behind her back for an extended period of time after she was already subdued and posed no risk of harm to anyone.

60. Defendants Aldridge and Myers were deliberately indifferent to the health and safety of Tanesha Anderson by unreasonably delaying any request for medical care after using force and restraining her in the prone position.

61. Defendant City of Cleveland failed to provide an adequate policy to guide officers who encountered mentally ill citizens such as Tanisha Anderson.

62. Defendant City of Cleveland failed to provide an adequate policy to guide officers regarding positional asphyxiation.

63. Defendant City of Cleveland failed to adequately train and supervise the defendant officers regarding encounters with mentally ill individuals.

64. Defendant City of Cleveland failed to adequately train and supervise the defendant officers regarding positional asphyxiation.

65. The failure to train and supervise officers regarding interacting with people with disabilities and positional asphyxiation was deliberately indifferent to the rights of individuals with mental disabilities, including Tanisha Anderson.

66. The failure to train and supervise officers regarding positional asphyxiation was deliberately indifferent to the rights of individuals likely to be restraine din the prone position, including Tanisha Anderson.

67. The rules, regulations, customs, policies, practices, usages, procedures, inadequate training and supervision pursued by the Defendants were all inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Tanisha Anderson.

## V. SECOND CAUSE OF ACTION – WRONGFUL DEATH

68. Defendants' actions caused the wrongful death of Tanisha Anderson resulting in damages recoverable under R.C. § 2125.02.

## VI. THIRD CAUSE OF ACTION – ASSAULT AND BATTERY

69. Defendants Aldridge and Myers intentionally and maliciously applied and threatened to apply unlawful and unnecessary force against Tanisha Anderson.

12

## VII. FOURTH CAUSE OF ACTION--AMERICANS WITH DISABILITIES ACT

70. The rendering of police services constitutes a "service, program, or activity" of the City of Cleveland within the meaning of Title II of the ADA.

71. Defendants intentionally discriminated against Tanisha Anderson or failed to provide her a reasonable accommodation when they used unnecessary and excessive force against her because of her disability, in violation of Title II of the Americans with Disabilities Act.

## VIII. JURY DEMAND

72. Plaintiffs request a jury trial on all claims triable to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court award:

A. Compensatory damages in an amount to be shown at trial;

B. Punitive damages against the individual Defendants Aldridge and Myers (not the City of Cleveland) in an amount to be shown at trial;

C. Costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988;

D. Prejudgment interest; and

E. Such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

| | |
|---|---|
| s/ Alphonse A. Gerhardstein | s/David B. Malik |
| Alphonse A. Gerhardstein (0032053) | David B. Malik (0023763) |
| Trial Attorney for Plaintiffs | Trial Attorney for Plaintiffs |
| Jennifer L. Branch (0038893) | Sara Gedeon (0085759) |
| Gerhardstein & Branch, Co LPA | Attorney for Plaintiffs |
| 432 Walnut Street, Suite 400 | 8437 Mayfield Road, Suite 103 |
| Cincinnati, Ohio 45202 | Chesterland, OH 44026 |
| (513) 621-9100 | (440) 729-8260 |
| Fax (513) 345-5543 | (440) 729-8262 fax |
| agerhardstein@gbfirm.com | dbm50@sbcglobal.net |
| jbranch@gbfirm.com | sgedeon1021@gmail.com |